NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| W. JAMES MAC NAUGHTON, | Civil Action No.: 09-5450 (PGS) |
| Plaintiff, | |
| v. | OPINION |
| SHAI HARMELECH, et al. | |
| Defendants. | |

SHERIDAN, U.S.D.J.

This case involves a dispute between an attorney and his client over unpaid fees. Plaintiff W. James Mac Naughton ("Plaintiff") has filed suit against Shai Harmelech, Cable America, Inc. and USA Satellite & Cable, Inc. ("Defendants") claiming he is owed at least $60,000 for legal services performed for Defendants in Illinois. Plaintiff also seeks statutory and punitive damages, as well as attorney fees and costs generated in connection with Plaintiff's filing of his complaint. Defendants, however, dispute the amount owed, and argue that Illinois, not New Jersey, is the appropriate forum for this case. Currently before the Court is Defendants' motion to dismiss, Defendants' motion for the *pro hac vice* admission of Donald F. Spak, and Plaintiff's motion for sanctions. For the following reasons, Defendants' motion to dismiss is granted in part and denied in part, Defendants' *pro hac vice* motion is granted, and Plaintiff's motion for sanctions is denied without prejudice.

I. **BACKGROUND**

Plaintiff specializes in telecommunications and satellite programming law. (Mac Naughton Opp. Decl. ¶ 3.) In May 2009, Plaintiff received a phone call from defendant Shai Harmelech, president of Cable America, Inc. ("Cable America"), and vice-president of USA Satellite & Cable, Inc. ("USA Satellite"), requesting representation in an action pending in the United States District Court for the Northern District of Illinois, *Russian Media Group, LLC v. Cable America, Inc., et al.* (the "Illinois Action"). (*Id.* ¶ 4.) The Illinois Action was brought against Harmelech because he had allegedly "engaged in a scheme to pirate the Russian language programming of DirecTV." (*Id.* ¶ 5.) *See also Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 304 (7th Cir. 2010) (affirming preliminary injunction because "Harmelech pirated Russian-language satellite television programming to enable him to compete unfairly against RMG's legitimate business").

On or about May 8, 2009, Plaintiff and Harmelech entered into a retainer agreement. (*Id.* Ex. A; Compl. ¶ 8.)[1] Pursuant to that agreement, Plaintiff would bill Defendants $300 an hour for his services, plus expenses. (Mac Naughton Opp. Decl. Ex. A.) Harmelech also agreed to a $6,000 retainer, and to pay a monthly advance once Plaintiff entered an appearance in the Illinois Action. (*Id.*) Finally, the agreement contained a forum selection clause, which stated as follows:

> Any disputes arising out of my representation of the Client, including without limitation, an action to collect unpaid fees, will be determined in New Jersey and the Client consents to the jurisdiction of the New Jersey courts for any such action.

Plaintiff was, however, only one of a "gaggle of lawyers" representing Harmelech in the Illinois

---

[1] The Court may consider the retainer agreement on a motion to dismiss because it is referenced in complaint. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court can also consider documents attached to the complaint. *Id.*

2

Action. (*Id.* ¶ 14.)

By mid-June 2009, Harmelech had fallen behind on his payments to Plaintiff. (*Id.* ¶ 15.) Nonetheless, Harmelech allegedly assured Plaintiff that he possessed sufficient cash flow to cover his debts, generated from subscribers of his companies' satellite services. (*Id.*; Compl. ¶¶ 36-37.) In accordance with his representation, on June 14, 2009 and June 25, 2009, Harmelech issued and delivered three checks payable to Plaintiff in the amounts of $10,000, $14,000, and $13,000. (Compl. ¶¶ 12, 16, 20.) However, all three checks bounced after being deposited by Plaintiff. (*Id.* ¶¶ 15, 19, 23.) According to Plaintiff, Harmelech had "knowledge that none of the [b]ad [c]hecks would be paid by Defendant USA Satellite's bank." (*Id.* ¶ 24.) Plaintiff further alleges that he only continued to represent Defendants in the Illinois Action based upon Harmelech's promise of payment. (*Id.* ¶¶ 36-37.)

As a consequence of Harmelech's bounced checks, by August 12, 2009, Defendants owed Plaintiff $65,879 for unpaid legal fees and expenses. (*Id.* ¶ 25.) In an effort to resolve this debt, on August 12, 2009, Harmelech executed a promissory note in favor of Plaintiff for $65,879, which also stated that Defendants would "be liable for all reasonable attorneys fees and costs arising out [of] the collection or enforcement of this Note or the Security Agreement." (*Id.* Ex. A.). Further, the security agreement purportedly granted Plaintiff a security interest in "all of [Defendants'] right, title and interest in any and all real or personal property wherever located." (*Id.*) In connection with the note, Plaintiff also filed a UCC Financing Statement with the Illinois Secretary of State. (*Id.* Ex. B.) The first payment due under the promissory note was due on August 14, 2009, with subsequent payments to be made thereafter. (*Id.* Ex. A.)

On August 15, 2009, Harmelech paid Plaintiff $5,000 pursuant to the promissory note's payment schedule. (*Id.* ¶ 28, Ex. A.) Plaintiff contends that was the last payment that he received from Defendants. (*Id.* ¶ 28.) Consequently, pursuant to pursuant to 810 Ill. Comp. Stat. 5/9-610, on or about October 2, 2009, Plaintiff sent a Notice of Disposition of Collateral indicating that Plaintiff would auction Defendants' collateral at his office in New Jersey on October 23, 2009 at 2 p.m. (Compl. Ex. D.)

On October 16, 2009, Donald F. Spak, also counsel for Defendants, wrote to Plaintiff demanding that he "cease and desist from attempting to enforce [his] claimed security interest because [his] claimed security interest never attached to any of the debtors' property." (*Id.* Ex. E.) According to Spak, Plaintiff's security interest never attached to Defendants' collateral because the description of the collateral in the security agreement -- "any and all real or personal property wherever located" -- is an "unreasonable supergeneric description" that violated the Illinois Uniform Commercial Code. (*Id.*) Spak further asserted that having the proposed sale in New Jersey was commercially unreasonable. (*Id.*)

Plaintiff eventually rescinded his notice to sell Defendants' collateral, and instead elected to file suit in the District of New Jersey. On October 26, 2009, Plaintiff filed a four count complaint alleging violations of Illinois's Deceptive Practices Act, 720 Ill. Comp. Stat. 5/17-1, fraud, and breach of contract. Plaintiff's fourth count seeks declaratory relief regarding the validity of his security interest, but does not allege a substantive cause of action. Defendants now move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, or alternatively transfer this case to the Northern District of Illinois.

## II. DISCUSSION

### A. Dismissal Pursuant to Rule 12(b)(1)

Prior to addressing the sufficiency of Plaintiff's allegations pursuant to Rule 12(b)(6), the Court must first consider Defendants' jurisdictional argument.[2] Defendants claim that the Court lacks diversity jurisdiction pursuant to 28 U.S.C. § 1332[3] because the amount in controversy is less than $75,000 for at least two reasons. Defendants do not dispute the parties' alleged citizenship. First, Defendants assert that they have made pre- and post-complaint payments to Plaintiff, which reduce the amount owed to $62,417. (Defs'. Br. at 4.) Second, Defendants assert that Plaintiff's fraud claim is not cognizable, and should not be considered for purposes of the amount in controversy requirement. (*Id.* at 4.)

Dismissal pursuant to Rule 12(b)(1) is only appropriate if a court "is certain that the jurisdictional amount cannot be met." *Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997) (quoting *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir. 1995) (internal quotations omitted). Thus, a federal court "retains jurisdiction even if the plaintiff cannot ultimately prove all of the counts of the complaint or does not actually recover damages in excess of [the requirements of 28 U.S.C. § 1332]." *Id.* "The court should not consider in its jurisdictional inquiry the legal sufficiency of those claims or whether the legal theory advanced by the plaintiffs is probably unsound." *Id.*

---

[2] In opposition to Defendants' motion, Plaintiff filed a proposed sur-reply. (ECF No. 24.) The Court did not grant Plaintiff leave to file a sur-reply, but has nonetheless considered it in its decision.

[3] 28 U.S.C. § 1332 requires that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Plaintiff pleads diversity jurisdiction because the amount in controversy as pled exceeds $75,000. Count One of the complaint claimed, *inter alia*, treble damages in the amount of $4,500, pursuant to 720 Ill. Comp. Stat. 5/17-1a, and attorneys fees and costs in an amount to be determined but at least $6,000. Count Two, the fraud claim, *inter alia*, requests $15,000 in punitive damages. In Count Three, the plaintiff asks for recovery of the unpaid promissory note and interest, which at the time totaled $60,917. Finally, Count Four prays for attorneys fees and costs in an amount to be determined but at least $6,000.

Even if the Court were to accept Defendants' math -- under which the balance of Defendants' debt is only $62,417, inclusive of statutory damages -- there is no basis for disregarding Plaintiff's fraud claim for purposes of Rule 12(b)(1). Whether or not Plaintiff's fraud claim is cognizable is more appropriately considered in the context of a Rule 12(b)(6) motion. *See Suber*, 104 F.3d at 583 ("The court should not consider in its jurisdictional inquiry the legal sufficiency of those claims or whether the legal theory advanced by the plaintiffs is probably unsound."). Further, plaintiff alleged an aggregate amount of attorney fees, to be paid pursuant to the promissory note, of at least $12,000 and treble damages of $4,500. Thus, disregarding the punitive damages connected to the fraud claim, plaintiff still alleged damages in excess of $75,000. Accordingly, Defendants' motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(1) is denied.

### B. Dismissal Pursuant to Rule 12(b)(6)

Defendants also seek dismissal of counts two and four of Plaintiff's complaint pursuant to Rule 12(b)(6). On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a court is required to accept as true all allegations in the complaint and to view the facts in a light most favorable to the non-moving party. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. *Iqbal*, 129 S. Ct. at 1950. A court will not, however, accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 129 S. Ct. at 1949. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. In other words, "factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

### 1. Fraud

The second count of Plaintiff's complaint is common law fraud. In order to state a claim for fraud under Illinois law, a plaintiff must allege the following elements: (1) a false statement of material fact; (2) knowledge or belief that the statement is false; (3) intent to create reasonable reliance on the part of the plaintiff, and actual reliance; and (4) injury to the plaintiff. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 766 (7th Cir. 2010) (citing *Redarowicz v. Ohlendorf*, N.E.2d 324, 331 (Ill. 1982).[4]

In addition to these substantive elements, a plaintiff must also satisfy the heightened pleading requirements of Rule 9(b). Pursuant to Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Often, this requirement is characterized as "the first paragraph of any newspaper story"; that is, "the who, what, when, where, and how." *Institutional Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009) (internal quotations omitted).

---

[4] The parties do not dispute that Illinois law governs Plaintiff's claims.

Plaintiff has not alleged his fraud claim with particularity. Plaintiff claims that Harmelech intended to defraud him because Harmelech stated he had "immediate access to sufficient funds to pay all of the amounts due." (Compl. ¶ 36.) However, assuming that Harmelech's statement is materially untrue, there are no particularized allegations that Harmelech knew his statements were false when they were made. Rather, in light of the Illinois Action, it is quite plausible Harmelech did not appreciate the extent of his financial condition. Indeed, had Harmelech known that his first check would bounce, it is unlikely he would have issued and delivered to Plaintiff two additional checks, or executed a promissory note and security agreement. Absent additional allegations, Plaintiff's fraud claim is dismissed without prejudice. Within twenty days, Plaintiff may amend his complaint to allege fraud sufficiently.

## 2. Validity of Security Interest

The fourth count of Plaintiff's complaint seeks a declaratory judgment regarding the validity of his security interest in Defendants' real and personal property. On August 12, 2009, Harmelech executed a security agreement purportedly granting Plaintiff security interest in "all of [Defendants'] right, title and interest in any and all real or personal property wherever located." (Mac Naughton Opp. Decl. Ex. A.)

Plaintiff's August 12, 2009 agreement did not create a security interest in Defendants' real property under either the Illinois Commercial Code or common law. The Illinois Commercial Code clearly states that it "does not apply to 'the creation of or transfer of an interest in or lien on real estate, including a lease or rents thereunder.'" *Travelers Ins. Co. v. First Nat'l Bank of Blue Island*, 621 N.E.2d 209, 213 (Ill. App. 1993) (quoting 810 Ill. Comp. Stat. 5/9-104(j)). Moreover, Plaintiff's agreement does not constitute a mortgage because there is no express description of property. 54A

8

Am. Jur. 2d Mortgages § 32 (2010); *accord Panetta v. Equity One, Inc.*, 190 N.J. 307, 323 (2007) ("Generally, if property is not expressly included in the instrument's description, it will not be covered by the mortgage."); *cf. Sowder v. Sowder*, 977 P.2d 1034, 1038 (N.M. App. 1999) ("share of property" insufficient to create mortgage); *compare S. Ill. Nat. Bank of E. St. Louis v. Thaxton*, 1922 WL 2429, at *2 (Ill. App. 1922) ("Any description of land in a deed by which the property may be identified by a competent surveyor, with reasonable certainty, either with or without the aid of extrinsic evidence, is sufficient."). Thus, Plaintiff does not have a security interest in Defendants' real property.

Plaintiff's August 12, 2009 agreement also did not create a security interest in Defendants' personal property. Under the Illinois Commercial Code, "a description of collateral reasonably identifies the collateral if it identifies the collateral" by one of the following:

> (1) specific listing; (2) category; (3) . . . a type of collateral defined in the Uniform Commercial Code; (4) quantity; (5) computational or allocational formula or procedure; or (6) . . . any other method, if the identity of the collateral is objectively determinable.

810 Ill. Comp. Stat. 5/9-108(b). This requirement is not met, however, if collateral is "supergeneric" -- that is, described as "'all the debtor's assets' or 'all the debtor's personal property' or using words of similar import." 810 Ill. Comp. Stat. 5/9-108(c); 33 Ill. Law and Prac. Secured Transactions § 64 (2010).

Plaintiff's description of Defendants' personal property does not satisfy these requirements. Rather, Plaintiff's description of Defendants' collateral -- "all of [Defendants'] right, title and interest in any and all real or personal property wherever located" -- is akin to the examples highlighted by the Illinois Code. Thus, Plaintiff does not have a security interest in Defendants'

9

personal property. Count four of Plaintiff's complaint is dismissed.

### C.    Motion to Transfer

In lieu of dismissal, Defendants seek to have this matter transferred to the Northern District of Illinois. Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The decision to transfer a case is "entirely within the discretion of the court[] and involves an individualized, fact intensive consideration of all the relevant factors. *Cancer Genetics, Inc. v. Kreatech Biotechnology, B.V.*, Civil Action No. 07-273 (JAG), 2007 WL 4365328, at *2 (D.N.J. Dec. 11, 2007). The moving party bears the burden of proof that a transfer is necessary. *Id.* (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970)).

Defendants have failed to meet their burden. Defendants claim that a transfer is necessary because all of the defendants, witnesses, and persons holding property in which a security interest is claimed are located in Illinois. (Defs.' Br. at 6.) Defendants also challenge the validity of the forum selection clause located in the parties' retainer agreement, claiming it was obtained "through direct and veiled threats." (Defs.' Reply Br. at 5.)[5] However, Defendants arguments fail in at least two respects. First, Defendants have not set forth with any specificity exactly what prejudice will come from litigating this matter in New Jersey to either Defendants or any witnesses. Indeed, it is Plaintiff who may be prejudiced by his selection of New Jersey as the forum because any third party witnesses may refuse to participate in discovery or appear for trial. Second, Defendants' challenge

---

[5] As discussed further below, it is evident from the documents filed in support of the parties' motions that Plaintiff's relationship with Harmelech and defense counsel is extremely contentious. Nonetheless, there is no evidence that the forum selection clause was agreed to under threat.

10

to the forum selection clause rings hollow. Plaintiff's forum selection clause is presumptively valid. *In re Exide Techs.*, 544 F.3d 196, 218 n.15 (3d Cir. 2008). And any of Plaintiff's alleged "direct and veiled threats" were made in mid-June 2009, well after the May 8, 2009 retainer agreement was executed. (Mac Naughton Opp. Decl. Ex. A.) Thus, Defendants' motion to transfer to case to the Northern District of Illinois is denied.

### D.     Motion for Sanctions and Motion for *Pro Hac Vice* Admission

Plaintiff seeks sanctions for defense counsel Michael Patunas's suggestion that Plaintiff exercised undue influence over Defendants, violated ethics rules, and coerced Defendants to agree to a New Jersey forum. (Pl.'s Sanctions Br. at 1-2.) Plaintiff argues that Patunas violated Rule 11 because he did not conduct a reasonable investigation as to whether these accusations were accurate. (*Id.* at 2.) Relatedly, Plaintiff opposes the *pro hac vice* admission of defense counsel Donald F. Spak because he is listed as "of counsel" on Patunas's brief with the offending accusations.

Although defense counsel's allegations are no doubt strongly worded, there is insufficient evidence to determine at this stage of the litigation whether defense counsel failed to conduct a reasonable investigation. Moreover, there is no evidence to suggest Spak's *pro hac vice* admission should be denied at this time. However, should Plaintiff present additional evidence of defense counsel's bad faith, or the parties rhetoric continue to escalate, Plaintiff may renew his motion for sanctions. Thus, Defendants' *pro hac vice* motion is granted, and Plaintiff's motion for sanctions is denied without prejudice.

11

### III.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part, Defendants' motion for the *pro hac vice* admission of Spak is granted, and Plaintiff's motion for sanctions is denied without prejudice.  Count two of the complaint is dismissed without prejudice, and count four is dismissed.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

September 22, 2010