UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| W. JAMES MAC NAUGHTON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SHAI HARMELECH, CABLE AMERICA, INC., d/b/a SATELLITE AMERICA and USA SATELLITE & CABLE, INC.,<br><br>　　　　Defendants. | Civil Action No. 09-5450 (KM)<br><br>**CLERK'S ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO TAX COSTS** |

　　　　This matter has come before the Clerk on the unopposed motion [Dkt. Entries 415, 437] of pro se Plaintiff W. James Mac Naughton ("Plaintiff," "Mac Naughton") to tax costs against Defendants Shai Harmelech ("Harmelech"), Cable America, Inc., d/b/a Satellite America and USA Satellite & Cable, Inc. (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 54(d) and Local Civil Rule 54.1.

　　　　Familiarity with the factual and procedural histories of this case is presumed. A very simplified synopsis is given, to the extent necessary for the determination of the present costs motion. This is essentially a diversity suit for monies allegedly owed Plaintiff for his legal representation of Defendants in a Northern District of Illinois action. Plaintiff, a New Jersey resident and licensed New Jersey attorney who specializes in the satellite television industry, represented Harmelich, an Illinois resident and the co-defendant Illinois corporations, owned by Harmelech, from approximately May 7 to July 16, 2009.

　　　　The May 2009 retainer agreement which Defendants executed with Mac Naughton provided for his fee of $300 per hour plus expenses, and an interest rate of 1% per month for

unpaid bills.  New Jersey was designated as the forum for disputes arising out of Plaintiff's representation.

Things went awry when the first three checks issued by Defendants to Mac Naughton were returned for insufficient funds.  Due to an unpaid balance of $65,000, Plaintiff suspended work for Defendants on July 16, 2009 and threatened to withdraw as counsel in the Illinois action.

On August 12, 2009, the parties agreed to settle the dispute over Plaintiff's unpaid bills and Defendants' bad checks by executing a promissory note in the amount of $65,879 with 12% annual interest, as well as a security agreement which gave Mac Naughton "a security interest in all of the [defendants'] right, title and interest in any and all real or personal property wherever located." [Dkt. Entry 1 at 9-13].  On that date, Plaintiff also filed a UCC Financing Statement with the Illinois Secretary of State.  Id. at 14.  Paul Korniczky, Esq., Plaintiff's co-counsel in the Illinois action, represented Defendants in their fee negotiations with Plaintiff.

By the terms of the promissory note, Defendants consented to the jurisdiction of the courts of the State of New Jersey "for any and all matters arising out of collection or enforcement of this Note or the Security Agreement."  Defendants also agreed to be liable "for all reasonable attorney's fees and costs arising out of the collection or enforcement of this Note and Security Agreement."[1]

---

[1] The factual background involves many other transactions, and details regarding them, Plaintiff's aggressive collection tactics and the parties' acrimonious relationship are outlined in the Court's opinion addressing the parties' dismissal and summary judgment motions. [Dkt. Entry 408].  The procedural background herein similarly glosses over contentious discovery disputes, including motions for sanctions, temporary restraints, numerous motions to withdraw by Defendants' various counsel, other motions denied by the Court and registration of this Court's judgment in Illinois.

On October 26, 2009, after Defendants defaulted on the note, Mac Naughton filed his original complaint in this Court. [Dkt. Entry 1]. In count four thereof, Plaintiff sought a judgment declaring that he had a valid security interest in the property described in the security agreement. However, that count was dismissed on September 22, 2010 on the ground that the agreement was not a valid security interest under the Illinois Commercial Code because it contained a supergeneric description of Defendants' property. [Dkt. Entries 35, 36].

Thereafter, Plaintiff twice amended his complaint [Dkt. Entries 37, 61], carrying over the dismissed fourth count as well as counts for: violation of the Illinois statute which prohibits the issuance of bad checks (count 1); fraud (count 2); breach of a promissory note (count 3); breach of the May 2009 retainer agreement (count 5); reformation of the promissory note and security agreement (count 6); and equitable lien (count 7).

In response to the Second Amended Complaint, Defendants asserted four counterclaims, seeking damages under the Illinois Commercial Code, based upon Mac Naughton's attempt to obtain a security interest in furtherance of his fee collection. [Dkt. Entry 71].

In November 2014, Defendants filed a motion to dismiss the complaint for lack of standing [Dkt. Entry 382] and the parties filed cross-motions for summary judgment [Dkt. Entries 379, 380]. In ruling on those motions, on July 13, 2016, the Court dismissed all of Defendants' counterclaims and all counts of the Second Amended Complaint except for the third count for breach of the promissory note, upon which it granted Plaintiff summary judgment. [Dkt. Entry 409].

On July 21, 2016, Mac Naughton requested that the Court enter judgment in his favor in the amount of $71,763, i.e., the amount he asserted was due on his third count as of the filing

of his summary judgment motion ($61,942), plus 12% interest through the date of his request ($9,821).  [Dkt. Entry 410].

On July 22, 2016, Harmelech (appearing pro se as of April 11, 2014*)* and the other defendants filed notices of appeal to the Court of Appeals for the Third Circuit [Dkt. Entries 411, 412] and those appeals remain pending.

On July 27, 2016, Mac Naughton filed a bill of costs [Dkt. Entry 415] pursuant to Fed. R. Civ. P. 54(d)(1), requesting a total of $10,665.82, comprised of $7,732.33 in costs sought under 28 U.S.C. § 1920, plus 12% interest in the amount of $2,933.49.

On August 4, 2016, Plaintiff filed a separate motion for attorney's fees and costs in the amount of $224,761.87, pursuant to Fed. R. Civ. P. 54(d)(2).  [Dkt. Entries 416, 417].

Over Defendants' objection [Dkt. Entry 418], on September 6, 2016, the Court entered judgment in favor of Mac Naughton, in the form previously filed by him.  Plaintiff was awarded, jointly and severally against all three defendant, $71,763, "which includes prejudgment interest of 12% pursuant to a Promissory Note dated August 12, 2009 along with costs." [Dkt. Entry 422].

On October 13, 2016, Magistrate Judge Hammer issued a report and recommendation ("R & R") denying Plaintiff's motion for attorney's fees and costs on the ground that both New Jersey and Illinois law prohibit awarding attorney's fees to pro se attorneys.  [Dkt. Entry 426].

Mac Naughton filed an objection to the Magistrate Judge's R & R on October 27, 2016 [Dkt. Entry 427] and that matter is currently pending.

On November 8 and 9, 2016, Defendants moved to stay enforcement of the judgment pending the appeals while wholly or partially waiving the bond requirement [Dkt. Entries 430, 431] and that motion was denied [Dkt. Entry 441].

On November 17, 2016, the Clerk alerted Plaintiff to deficiencies in his bill of costs, i.e., the lack of a notice of motion and missing receipts, both required under our local court rule, L. Civ. R. 54.1. [Dkt. Entry 436]. In response, on November 18, 2016, Plaintiff filed the motion to tax, here under review, with the appropriate notice of motion, setting forth a return date of December 2, 2016. Having received no opposition by now, past that date, the Clerk views this motion as unopposed. Plaintiff also withdrew his request for the three items which he failed to substantiate with receipts. The amount requested in his new bill of costs [Dkt. Entry 437-1] has dropped from the original $10,665.82 to $9,406.68.

Through this costs motion, Mac Naughton requests reimbursement of: the fee for filing his complaint ($350.00); printed deposition transcripts ($5,850.10) along with room rental fees ($379.77); and witness fee for Paul Korniczky ($57.00). Added to this total of $6,636.87 is 12% interest, calculated by Plaintiff to be $2,769.81.

### I.  **Legal Standards**

Plaintiff makes this application pursuant to Fed. R. Civ. P. 54(d)(1), which states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." A prevailing party is "one in whose favor a judgment is rendered, regardless of whether the party has recovered its entire claim or a portion thereof." Garonzik v. Whitman Diner, 910 F. Supp. 167, 168 (D.N.J. 1995) (citing Fahey v. Carty, 102 F.R.D. 751 (D.N.J. 1983)).

There is such a strong presumption that costs should be awarded to the prevailing party that, "'[o]nly if the losing party can introduce evidence, and the district court can articulate reasons within the bounds of its equitable power, should costs be reduced or denied to the

prevailing party.'"  Reger v. Nemours Found., Inc., 599 F.3d 285, 288 (3d Cir. 2010) (quoting In re Paoli R.R.Yard PCB Litig., 221 F.3d 449, 468 (3d Cir. 2000)).

Despite this strong presumption, absent express statutory authorization, the district court and clerk may only grant those types of costs listed in 28 U.S.C. § 1920:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987).

That § 1920 must be narrowly construed was reinforced more recently by our highest court in the case of Taniguchi v. Kan Pacific Saipan, Ltd., wherein it limited the "compensation of interpreters" in § 1920 (6) to the cost of oral translation. 132 S.Ct. 1997 (2012). The Supreme Court noted that its denial of the cost of document translation was "in keeping with the narrow scope of taxable costs." Id. at 2006.

The Clerk's decision herein is further guided by our local court rule, L. Civ. R. 54.1, which "establishes the general procedures to be followed in those cases where a party is entitled to recover costs" under § 1920.  Lite, N.J. Federal Practice Rules, Comment 2 to Rule 54.1 (Gann 2017 ed.) at 264.

Having received final judgment in his favor, Mac Naughton is unquestionably the prevailing party and the Clerk finds no procedural irregularities warranting the denial of Plaintiff's application.  His first bill of costs was filed on July 27, 2016, 14 days after the

-6-

entry of the Court's order granting him summary judgment on count three, but actually before the entry on September 6, 2016 of final judgment in his favor, explicitly allowing his costs. Our local court rule, L. Civ. R. 54.1(a), sets forth a time frame of "[w]ithin 30 days after the entry of a judgment allowing costs." While the Court's order granting Plaintiff summary judgment is silent on costs, he became a "prevailing party" then as a result of that ruling and Defendants have not argued that Plaintiff's original bill of costs was premature or that they were prejudiced by its timing.

With the deficiencies raised by the Clerk now cured, Plaintiff's current application complies with the requirements in subsections (a) and (b) of L. Civ. R. 54.1 of filing a notice of motion and attorney verification, as mandated by 28 U.S.C. § 1924. Through his signature of the AO 133 Form [Dkt. Entries 415, 437-1], Mac Naughton has verified that the costs are correct and were necessarily incurred in this action and that the services were actually and necessarily performed, and, he has appended invoices supporting the requested costs.

As noted above, Plaintiff's motion is unopposed. Nevertheless, considering the Supreme Court's emphasis on restraint, the Clerk denies requested items which fall outside of the ambit of § 1920, even in the absence of opposition. Accordingly, the Clerk first examines the desired costs in the order in which they appear in § 1920 and then addresses the separate issue of interest, both pre and postjudgment.

## II.     Fees of the Clerk and Marshal, § 1920 (1)

Mac Naughton asks for the $350.00 filing fee as a § 1920 (1) fee of the clerk. When Plaintiff filed his complaint in 2009, the fee required under 28 U.S.C. § 1914(a) for filing a civil action was $350.00 and the docket indicates that he paid that fee. [Dkt. Entry 1]. This unopposed **$350.00** fee is allowed under § 1920 (1) as a fee of the clerk.

### III.     Fees for Printed Deposition Transcripts, § 1920 (2)

Pursuant to § 1920 (2), Plaintiff requests the costs of the transcripts of the depositions of: himself ($588.00, $350.50); Harmelech, in his individual capacity ($1,150.75) and as a Rule 30(b)(6) witness of the corporate defendants ($1,555.30); the above-discussed Paul Korniczky ($1,743.50); and Defendants' proposed expert witness, Supti Bhattacharya ($462.05). [Dkt. Entry 437-2, Ex. B].  Included by Mac Naughton under this category are also two room rental charges of $191.57 and $188.20, which he asserts were incurred in connection with the taking of depositions.  Itemization of Bill of Costs [Dkt. Entry 437-2] ¶3.

*Transcript Costs*

Subsection (2) of § 1920 allows for the taxation of "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case."  The necessity of all of the transcripts is evident to the Clerk, in view of the key roles that the above-mentioned deponents played in this litigation as parties, a key fact witness and proposed expert witness.

Moreover, the Third Circuit has interpreted "necessarily obtained" as allowing for the taxation of the costs of depositions used in deciding summary judgment motions.  In re Baby Food Antitrust Litig., 166 F.3d 112, 138 (3d Cir. 1999).  All but the Bhattacharya transcript were indeed cited by the parties and appended to their summary judgment briefing.  [Dkt. Entries 379, 380].  Additionally, the Court cited to those transcripts in its opinion ruling on the motions. [Dkt. Entry 408].

Even though the Bhattacharya deposition transcript was not used in the parties' summary judgment briefing, it is generally accepted by this Court and others that for their costs to be taxable, depositions need only to have "'appear[ed] reasonably necessary to the parties in light

-8-

of a particular situation existing at the times they were taken.'" Thabault v. Chait, Civ. No. 85-2441, 2009 WL 69332, at *7 (D.N.J. Jan. 7, 2009) (quoting Datascope Corp. v. SMEC, Inc., Civ. No. 81-3948, 1988 WL 98523, at *3 (D.N.J. Sept. 15, 1988)); Smith v. Crown Equip. Corp., No. Civ. A. 97-541, 2000 WL 62314, at *3 (E.D. Pa. Jan. 13, 2000). Undoubtedlly, the deposition of Defendants' proposed expert witness would have appeared necessary when taken, even though it might not have been actually used. Accordingly, the Clerk determines that all of the transcripts were "necessarily obtained for use in the case."

The Clerk customarily grants just the reasonable cost of the original and one certified copy of the transcript ("O+1") plus reporter attendance fees or a certified copy. Absent a showing of necessity, not made here, the costs of litigation support services, exhibits and packaging & handling are denied as being either a convenience to counsel or in the nature of attorney's fees. See e.g., New Jersey Mfrs. Ins. Group v. Electrolux, Inc., Civ. No. 10-1597, 2013 WL 5817161, at **6, 8 (D.N.J. Oct. 21, 2013); Warner Chilcott Labs. Ireland Ltd. v. Impax Labs., Inc., Civ. Nos. 08-6304, 09-2073, 09-1233, 2013 WL 1876441, at *6-7 (D.N.J. Apr. 18, 2013). Therefore, those will be deducted here.

In light of the above, the Clerk taxes just the following deposition costs:

| **Deponent** | **Taxed Amount** |
|---|---|
| **W. James Mac Naughton (4/29/13)** | |
| Certified copy | $ 553.00 |
| **W. James Mac Naughton (7/2/13)** | |
| Certified copy | $ 294.00 |
| **Shai Harmelech, R. 30(b)(6) (4/24/13)** | |
| O + 1 | $1,445.30 |
| Reporter attendance | $ 100.00 |

| **Deponent** | **Taxed Amount** |
|---|---|
| **Shai Harmelech (7/1/13)** | |
| O + 1 | $1,042.75 |
| Reporter attendance | $ 100.00 |
| | |
| **Paul Kornizcky (6/28/13)** | |
| O + 1 | $1,170.00 |
| Reporter attendance | $ 385.00 |
| | |
| **Supti Bhattacharya (4/24/14)** | |
| O + 1 | $ 354.05 |
| Reporter attendance | $ 100.00 |
| | |
| **Total:** | **$5,544.10** |

*Room Rental Fees*

Plaintiff presents the two room rental fees from Regus Management Group, LLC ("Regus") as arising out of depositions held in Parsippany, NJ, but the invoice for the $188.20 charge has a due date of January 7, 2013 and the other for $191.57 covers the period of March 11-April 10, 2013.  While the invoices of Verbatim Service, certified court reporters, show that the two Harmelech depositions were taken in Parsippany, they occurred on April 24 and July 1, 2013, after the dates of the Regus invoices.  In fact, all of the depositions post-date the Regus invoices.  Therefore, the invoice dates and Plaintiff's stated purpose do not match up and the function of the rooms is not indicated on the Regus invoices themselves.

Furthermore, the Clerk doubts the necessity of this expense, considering that a conference room in the Newark courthouse was made available for depositions but Plaintiff rebuffed such an offer on the ground that he wanted access to the amenities of an office, such as a copier. [Dkt. Entries 232-34].

Setting aside the deficiency of Plaintiff's proofs and the questionable necessity of these charges, this type of cost presents an interesting question for the Clerk.  Last year, the Sixth

Circuit described itself as the first circuit court to consider the taxation of the cost of a room rental for depositions.  Freeman v. Blue Ridge Paper Products, Inc., 624 F. App'x 934, 942 (6th Cir. 2015).  It discussed decisions wherein district courts have lined up on either side of the issue.  Noting that "[s]ome district courts have disallowed the cost of a conference room rental because the cost was inadequately explained," id., the court affirmed the district court's taxation on the ground that "[the prevailing party] provided an adequate explanation that sufficiently connected the room rental cost to the actual depositions, rather than general business overhead – specifically, the convenience to the witnesses and the reduction of otherwise taxable travel costs."  Id. at 943.  Renting the hotel conference room, charged at $100/day for four days and conveniently located near the witnesses, was more efficient and less burdensome than requiring each witness to travel to counsel's office.

The Clerk finds more persuasive the analysis of case law holding that room rental fees are not taxable under § 1920.  As the court explained in the case of Olivarius v. Tharaldson Prop. Mgmt. Inc., room rental fees are "more akin to administrative fees incurred in the cost of doing business."  No. 08 C 463, 2012 WL 1117468, at * 3 (N.D.Ill. Apr. 3, 2012) (quoting Mason v. SmithKline Beecham Corp., No. 05-1252, 2008 WL 5397579, at *3 (C.D.Ill. Oct. 7, 2008)).  The court noted that the prevailing party defendant chose to schedule depositions via video conference rather than have its counsel travel to take the depositions in person and reasoned, "[h]ad counsel traveled to take these depositions in person, the expenses incurred for that travel would not have been recoverable costs under 28 U.S.C. § 1920."  Id. at *4.  It concluded, "[t]herefore we decline to tax these expenses and require plaintiffs to reimburse those costs incurred when defendant decided to take those depositions via video conference rather than in person."  Id.

Being cognizant of the Supreme Court's very restrictive application of § 1920 in the Taniguchi case, and similarly, the Third Circuit's in Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158 (3d Cir. 2012), the Clerk adopts the Olivarius holding that such costs are not taxable under § 1920.

For the foregoing reasons, the Clerk denies the room rental fees and taxes transcript costs under § 1920 (2) in the amount of **$5,544.10**.

### IV.    Witness Fees, § 1920 (3)

Pursuant to § 1920 (3), Plaintiff requests witness fees in the amount of $57 for the appearance of Paul Korniczky at his deposition.

Witness fees for attendance in federal cases are controlled by 28 U.S.C. § 1821, which allows a $40 per day attendance fee plus the costs of travel and subsistence pursuant to rates established by the Administrator of General Services.

Our local court rule incorporates § 1821 by reference:

> (1) The fees of witnesses for actual and proper attendance shall be allowed, whether such attendance was voluntary or procured by subpoena. The rates for witness fees, mileage and subsistence are fixed by statute (see 28 U.S.C. § 1821).

L. Civ. R. 54.1(g) (1).

L. Civ. R. 54.1(g) (7) also provides that "[f]ees for the witness at the taking of a deposition are taxable at the same rate as for attendance at trial.(See L. Civ. R. 54.1(g )(1).)"

The Clerk might have presumed that the requested $57 fee consists of the $40 fee for Mr. Korniczky's one-day attendance plus mileage to and from his deposition. However, while Plaintiff submitted his letter to Mr. Korniczky indicating that he paid the witness $57, that fee is not broken down. Additionally, Plaintiff's two bills of cost, AO form 1033 [Dkt. Entries 415

at 2; 437-1 at 2] show $57.00 under the "attendance" column and $0 under the other columns headed "subsistence" and "mileage". As noted above, attendance is allowed at the rate of $40 per day. Therefore, the Clerk grants just **$40.00** in witness fees and disallows the unidentified additional charge of $17.00.

### V.     Interest, Pre and PostJudgment

On top of the enumerated $6,636.87 in requested costs, Mac Naughton "respectfully ask[s] for interest at the rate of 12% per annum for [his] out of pocket costs . . . as set by the Promissory Note that is the subject of this action." Itemization of Bill of Costs ¶ 6. The interest, calculated by Plaintiff from the date of payment of the costs to the date of his motion, amounts to $2,769.81. Id. While he cites a Third Circuit case addressing postjudgment interest on costs, Plaintiff's request is actually comprised of both prejudgment and postjudgment interest, which the Clerk will address in turn.

*Prejudgment Interest*

In the normal course, that portion of the interest which runs from the date an amount is incurred until the date of the Court's final judgment constitutes prejudgment interest. In this federal diversity action, New Jersey's choice of law rules apply and consequently, this prejudgment interest question, considered thereunder as a procedural issue, is governed by New Jersey state law. Munich Reins. Am., Inc. v. Am. Nat'l Ins. Co., 999 F. Supp. 2d. 690, 758 (D.N.J. 2014), aff'd, 601 F. App'x 122  (3d Cir. 2015).

The Clerk determines that he cannot grant prejudgment interest for several reasons. First, in this motion for taxable costs under Fed. R. Civ. P. 54(d), Mac Naughton cites no authority for the proposition that New Jersey state law allows for the recovery of prejudgment

-13-

interest on taxable costs.  The above-cited Munich Reinsurance case addresses prejudgment interest on the underlying claims that were the subject of the action, and does not involve prejudgment interest on taxable costs.  Cf. Shelton v. Liberty Mut. Fire Ins. Co., No. 8:12–cv–2064–T–30AEP, 2014 WL 631886 (M.D.Fl. Feb. 18, 2014), rev'd on other grounds, 578 F. App'x 841 (11th Cir. 2014) (awarding prevailing plaintiffs taxable costs and prejudgment interest on their damages claim, but denying prejudgment interest on the taxable costs, stating that "there is no authority suggesting that Plaintiffs are entitled to prejudgment interest on costs" under Florida state law, there applicable).

Secondly, Mac Naughton bases his request for prejudgment interest on the provision in the promissory note of:  "[m]aker shall be liable for all reasonable attorney's fees and costs arising out of the collection or enforcement of this Note and Security Agreement."  To the Clerk's understanding, the term "costs" in the phrase "attorney's fees and costs" refers to non-taxable costs, such as were the subject of Plaintiff's separate, unsuccessful motion [Dkt. Entries 416, 426].  In any event, to the extent that Mac Naughton is relying upon a contractual provision, it is beyond the domain of the Clerk to interpret and enforce contractual provisions.

Moreover, even applying the principles of the Munich Reinsurance case here, under New Jersey state law, prejudgment interest in contract cases like this is controlled by equitable principles, rather than the New Jersey Court Rules, which apply in tort cases.  Munich Reinsurance, 999 F. Supp. 2d at 758.  The Clerk's job of assessing costs, described by the Supreme Court as "merely a clerical matter," Taniguchi, 132 S. Ct. at 2006, and "ministerial" by the Third Circuit, In re Paoli, 221 F.3d at 453, does not vest him with the power to exercise discretion and apply equitable principles.  This question lies outside of the Clerk's bailiwick.

-14-

Thirdly, it is not clear to the Clerk which "judgment" is relevant in this matter of prejudgment interest. Reference was made above to the final judgment, which is the usual benchmark where prejudgment interest is sought on damages arising out of the underlying claim. However, the Clerk questions whether the relevant judgment here is not the instant judgment quantifying Mac Naughton's taxable costs, and not the final judgment allowing him his costs. That is, if allowed, would prejudgment interest actually be calculated for the period between the date that the cost was incurred and the date of the entry of this Clerk's costs judgment, rather than the final judgment on the merits, earlier entered by this Court? This timing issue is discussed in greater detail below in connection with postjudgment interest and will become clearer in the analysis of the case of Eaves v. County of Cape May, 239 F.3d 527 (3d Cir. 2001) and its progeny. Again, it is beyond the ken of the Clerk.

For all of the foregoing reasons, the Clerk denies interest running from the time the costs were incurred until the date of the entry of this costs judgment.[1]

*Postjudgment Interest*

Mac Naughton does cite binding legal authority under which he is entitled to receive postjudgment interest on his taxable costs. Unlike prejudgment interest, which is controlled by New Jersey state law in this diversity case, postjudgment interest is governed by 28 U.S.C.

---

[2] The Clerk chooses to express his conclusion in these terms, rather than to say he is denying "prejudgment interest" because, as is explained below, postjudgment interest on taxable costs runs from the date of the entry of this Clerk's judgment, and not the Court's final judgment. Therefore, the Clerk is using his instant judgment as the dividing line between that which is denied and that which is granted in this motion, where Mac Naughton is seeking continuous interest.

§ 1961.  Section 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."

Whether costs are considered part of the "money judgment" for the purpose of applying § 1961 was first decided in the case cited by Mac Naughton, Devex Corp. v. Gen. Motors Corp., 577 F. Supp. 429 (D. Del. 1983), aff'd, 749 F.2d 1020 (3d Cir. 1984).  In the Devex case, the district court answered in the affirmative, awarding postjudgment interest on taxed costs.  The court found there that "the inclusion of an award of costs in the judgment suggests that costs are a part of the judgment upon which interest is mandatory under § 1961." Id. at 431.  That court reasoned that "[t]he fact that the taxation of costs took place well after the entry of judgment does not alter the fact that the award of costs was part of the judgment." Id.  In affirming the district court, the Third Circuit noted the trend among appellate courts to award postjudgment interest on costs in various types of cases, in light of the rising costs of litigation.  749 F.2d at 1026.

Similarly, in this case, the Court's final judgment, awarding Plaintiff $71,763 with prejudgment interest of 12% "along with costs" [Dkt. Entry 422] indicates that these taxable costs are a part of the judgment upon which postjudgment interest applies under § 1961.

As in the Devex case, the taxation of costs here is well after the entry of this Court's final judgment on September 6, 2016.  So the next issue arises, i.e., that of determining the starting date of the postjudgment interest.  That is, does it accrue as of the date of the entry of the final judgment allowing costs or this judgment quantifying the costs?  The Third Circuit wrestled with that issue when it addressed postjudgment interest on an award of attorney's fees.  In the earlier cited Eaves case, the circuit court held that under § 1961, "post-judgment interest on an attorney's fee award runs from the date that the District Court enters a judgment

quantifying the amount of fees owed to the prevailing party rather than the date that the Court finds that the party is entitled to recover fees, if those determinations are made separately." 239 F.3d at 542.

It must be noted that the Eaves court expressly stated that it was not addressing the exact issue now confronting the Clerk. The Third Circuit commented, "[w]e need not, and do not, address the open issue of the date from which post-judgment interest would run on costs taxed pursuant to 28 U.S.C. § 1920 . . . . " Id. at 539 n.13.

However, subsequently, the Third Circuit extended its Eaves holding to postjudgment interest on prejudgment interest. Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am., 609 F.3d 143 (3d Cir. 2010). The circuit court analyzed the issue as follows:

> Travelers urges us to distinguish this case from *Eaves* on the ground that *Eaves* dealt with an award of attorneys' fees and we deal here with an award of prejudgment interest. We see no basis for doing so. The conclusion in *Eaves* was driven by a general reading of the requirements of 28 U.S.C. § 1961(a), the statute that provides for post-judgment interest, not anything particular to attorneys' fees as a type of award. *See Eaves,* 239 F.3d at 538 (explaining that its result is based on the "plain language" of § 1961(a), rather than a fact-sensitive application of the policy considerations underlying the statute). Section 1961(a) provides in pertinent part that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court," and that "such interest shall be calculated from the date of the entry of the judgment ...." § 1961(a). What we held in *Eaves* was that (1) under § 1961(a), an award must be granted pursuant to a "money judgment" to trigger post-judgment interest, and (2) to count as a "money judgment" a judgment must include both "an identification of the parties for and against whom judgment is being entered," and "*a definite and certain designation of the amount* ... owed." *Eaves,* 239 F.3d at 532–33 (*quoting Penn Terra Ltd. v. Dep't of Envtl. Res.,* 733 F.2d 267, 275 (3d Cir.1984)) (emphasis in original). As such, *Eaves* requires us to read § 1961(a) as providing that, *as a general matter,* post-judgment interest on a particular award only starts running when a judgment quantifying that award has been entered. *See Skretvedt v. E.I. Dupont De Nemours,* 372 F.3d 193, 217 (3d Cir.2004) (interpreting *Eaves* to stand for this general reading of § 1961(a)). Although there is much to criticize in *Eaves,* its interpretation of § 1961(a) controls until the Supreme Court, or our own Court *en banc,* says otherwise.

Id. at 174-75.

-17-

Under the Travelers court's analysis, stating that "as a general matter," postjudgment interest runs from the date of the entry of the judgment quantifying the award, the Clerk is comfortable with extending the Eaves decision to an award of postjudgment interest on § 1920 taxable costs. So too was another court within this circuit. In the case of Montgomery Cnty. v. Microvote Corp., the district court held that even though the Eaves court sidestepped the precise issue, it would follow the Third Circuit's direction and ruled that postjudgment interest on the prevailing party's costs award began upon the entry of the court's money judgment. Civ. No. 97-6331, 2004 WL 1087196, at *9 (E.D.Pa. May 13, 2004).

Mac Naughton actually asks for interest for the period between the accrual of the costs and the time of filing his motion. However, as decided above, postjudgment interest under § 1961, as applied by the case law, only begins to run upon the entry of this Clerk's judgment, well after the filing of his motion. Nevertheless, postjudgment interest will be applied in this case because it is mandatory. Furthermore, because it is awarded by statute as a matter of law, it is automatically added, whether or not the district court orders it. Dunn v. Hovic, 13 F.3d 58, 62 (3d Cir. 1993).

The final issue before the Clerk is the rate of the postjudgment interest. On the basis of the promissory note provision, Mac Naughton asks for a 12% rate. However, as a general rule, postjudgment interest is awarded at the federal statutory rate stated in § 1961(a). That is, it "*shall* be calculated from the date of the entry of the judgment at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar year preceding the date of the judgment (emphasis added)." The language of § 1961(a) is mandatory, not discretionary.

-18-

Parties may contract to a rate other than that in § 1961(a), but to do so, they must use "clear, unambiguous and unequivocal language." Tricon Energy Ltd. v. Vinmar Int'l, Ltd., 718 F.3d 448, 458 (5th Cir. 2013).  See also Jou v. Adalian, Civ. No. 09-00226, 2015 WL 7451160, at *3 (D.Haw. Nov. 23, 2015) and cases from the Second, Fourth, Ninth and Tenth Circuits cited therein.  As he stated earlier, the Clerk is not in the position of interpreting the underlying contract language and cannot find that the requisite unambiguous language exists in this case.  Accordingly, the usual mandatory postjudgment rate of § 1961(a) shall be applied, not the 12% rate requested by Mac Naughton.

### VI.    Summary

In conclusion, the Clerk taxes the below costs in favor of Plaintiff and against Defendants:

| | |
|---|---|
| Fees of the clerk, § 1920 (1): | $   350.00 |
| Fees for printed transcripts, § 1920 (2): | $5,544.10 |
| Witness fees, § 1920 (3): | $     40.00 |
| **TOTAL:** | **$5,934.10** |

For the reasons set forth above, Plaintiff's motion to tax costs is hereby granted in part and denied in part and Judgment is entered in favor of Plaintiff **W. James Mac Naughton** and against Defendants **Shai Harmelech**, **Cable America, Inc., d/b/a Satellite America** and **USA Satellite & Cable, Inc.** in the amount of **$5,934.10**, plus postjudgment interest thereon from the date of the entry of this Judgment until paid, to be calculated as provided by 28 U.S.C. § 1961.

                        WILLIAM T. WALSH, CLERK

                        By: S/John T. O'Brien
                            Deputy Clerk

December 22, 2016